IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CR339 |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| **ARTURO GOMEZ MOLINA,** | ) | |
| | ) | |
| Defendant. | ) | |

    This matter is before the Court on the motion to suppress filed by the defendant Arturo Gomez Molina (Molina) (Filing No. 14). The defendant is charged in an Indictment with the possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1). Molina seeks to suppress all physical evidence and statements obtained as a result of a traffic stop by the Nebraska State Patrol (NSP) on September 7, 2005 on Interstate 80 near North Platte, Nebraska.

    An evidentiary hearing on the motion was held on December 1, 2005. Molina was represented by Assistant Federal Public Defender Julie B. Hansen and the United States was represented by Assistant U.S. Attorney John E. Higgins. Marcia Rabinovich, a certified interpreter in the Spanish language, served as the interpreter by remote telephone hook-up. The court heard the testimony of Trooper Shane Belgum (Trooper Belgum) of the NSP, Deputy Sheriff Rick Crown (Deputy Crown) of the Lincoln County Sheriff's Office and Jim Duran, a Spanish Language interpreter. The court also received into evidence the following exhibits: a videotape of the traffic stop (Exhibit 1); an NSP permission to search form in the Spanish language (Exhibit 2); a photograph of the defendant's vehicle (Exhibit 3); a photograph of the rear car door compartment (Exhibit 4); a photograph of the front passenger seat (Exhibit 5); a photograph of the front dash area (Exhibit 6); a photograph of the front dash air bag compartment (Exhibit 7); a photograph of a California license plate (Exhibit 8); a photograph of bundles from a compartment (Exhibit 9); a photograph of the inside of the compartment (Exhibit 10); another photograph of the inside of the compartment (Exhibit 11); a photograph of the side view of the compartment (Exhibit 12);

a photograph of the full portion of foil (Exhibit 13); a photograph of foil after being removed from compartment (Exhibit 14); and a prepared English translation of Exhibit 2 (Exhibit 15). Following the hearing the court required the government to file a partial transcript of the videotape to include the period of time that Molina was in Trooper Belgum's patrol vehicle. The transcript was filed on December 20, 2005 (Filing No. 22). Defendant had until December 23, 2005, to note any objections. None were filed and the matter was deemed submitted.

## FINDINGS OF FACT

At approximately 11:24 a.m. on the morning of September 7, 2005, Trooper Belgum was on duty, in uniform, and driving a marked NSP cruiser (TR. 7). Trooper Belgum observed a blue SUV traveling eastbound on Interstate 80 at an excessive rate of speed (TR. 7). Trooper Belgum initiated an electronic device and determined that the SUV was traveling at 83 miles per hour in a posted 75 miles per hour speed zone (TR. 7). Trooper Belgum initiated a traffic stop of the SUV near mile marker 187 eastbound on Interstate 80 between North Platte and Maxwell, Nebraska (TR. 8). Trooper Belgum's NSP cruiser was equipped with a videotape and audio system and the stop was recorded on an audio videotape (TR. 8-9; Exhibit 1). After the SUV pulled to the side of the Interstate, Trooper Belgum got out of his cruiser and walked to the passenger side of the SUV (TR. 10). As Trooper Belgum was walking to the front of the SUV, he noticed a small suitcase in the rear of the vehicle with a map lying on the passenger seat (TR. 10). The driver, Molina, was the sole occupant of the vehicle (TR. 9). As Trooper Belgum made contact with Molina through the passenger side window, Trooper Belgum detected a strong odor of detergent emitting from the interior of the SUV (TR. 10; 12). Trooper Belgum had received training in drug interdiction which taught that the odor of detergent can be used as a masking agent for illegal drugs (TR. 11). In English, Trooper Belgum asked Molina for a driver's license and vehicle registration (TR. 10; 13). Molina provided the documents to Trooper Belgum and Trooper Belgum asked Molina to get out of the SUV and accompany Trooper Belgum back to the NSP patrol car (TR. 13).

Molina got out of the SUV, accompanied Trooper Belgum to the NSP patrol car, and seated himself in the front passenger seat while Trooper Belgum entered the driver's seat of the patrol car (TR. 14). Once inside the patrol car, Trooper Belgum, again in English, informed Molina that Trooper Belgum would be issuing a warning for his speed and engaged Molina in general conversation (TR. 13). Trooper Belgum asked Molina about Molina's general travel plans, destination, and where Molina was coming from (TR. 14). Molina said he was coming from Long Beach, California, en route to Wisconsin (TR. 14). Molina stated he was visiting a cousin for a two week-vacation (TR. 14). However, Molina was unable to tell Trooper Belgum the name of the city (TR. 14). When asked by Trooper Belgum how Molina would get to where he was going, Molina said he had a phone number of his cousin and a map (TR. 15). Trooper Belgum initiated a records check and started to prepare a warning citation (TR. 15). While Trooper Belgum was doing that, Trooper Belgum continued to engage Molina in conversation (TR. 15). Molina could not tell Trooper Belgum where he was going but he said it was circled on the map (TR. 15). Trooper Belgum testified that the more he asked Molina about the trip, Molina seemed to become more nervous and uncomfortable by moving around in his seat (TR. 16).

Trooper Belgum received a response from the records check indicating that Molina was not wanted, Molina's license was not suspended, but that Molina had a criminal history involving drugs (TR. 16). Trooper Belgum gave Molina back Molina's driver's license and vehicle registration, handed him a warning citation for speeding and informed Molina that Molina did not have to do anything with the warning (TR. 17). Trooper Belgum told Molina that was all Trooper Belgum had for him and told Molina to have a safe trip and be careful (TR. 17). Whereupon Molina opened the patrol car door and started to get out (TR. 17). Trooper Belgum asked Molina if Trooper Belgum could ask Molina a few more questions if Molina did not mind (TR. 17). Molina sat back down in the passenger seat of the patrol car (TR. 17). Trooper Belgum started to ask Molina questions concerning illegal contraband (TR. 18). Asked if he had any illegal contraband with him or was transporting any, Molina said no (TR. 18). When asked if he had any illegal weapons, large amounts of U.S. currency, marihuana, heroin, cocaine, methamphetamine or drug paraphernalia, Molina stated no to each except that Molina's response to cocaine was slightly different as

"uh, no" in a nervous tone (TR. 18).   Trooper Belgum asked Molina if Molina would mind if Trooper Belgum searched Molina's vehicle (TR. 22).   Molina said "yeah" (TR. 23). Trooper Belgum asked Molina: "I can search your vehicle?" and Molina responded "no" and "yeah" and "I don't understand" when asked by Trooper Belgum to clarify his answers (TR. 23).   When Molina lastly stated he did not understand, Trooper Belgum got out of the driver's seat of the patrol car and opened the rear door of the patrol car and retrieved a Spanish language permission to search form from the back seat (TR. 23).   Trooper Belgum returned to the front seat of the patrol car, filled out various blanks in the form with Molinas's name and other information, and handed the form to Molina to read (TR. 24). Molina took the form and appeared to read the form (TR. 24).   Thereafter, Molina looked up or otherwise indicated to Trooper Belgum that Molina understood (TR. 24).   Trooper Molina asked Molina to sign the form if it was okay (TR. 24).   Molina signed the form (TR. 24; Exhibit 2).   Trooper Belgum had Molina get out of the car and be seated on the grass in front of the SUV while Trooper Belgum started the search of the SUV (TR. 25).

Deputy Crown of the Lincoln County Sheriff's Office was on duty returning from court on September 7, 2005 (TR. 99).   Deputy Crown was in uniform and driving a marked patrol car when he heard radio traffic concerning Trooper Belgum's traffic stop (TR. 99).   Deputy Crown had driven by the traffic stop initially but returned to offer assistance if Trooper Belgum required such (TR. 100).   Deputy Crown stayed in his patrol car parked behind Trooper Belgum's patrol car until Trooper Belgum and Molina got out of Trooper Belgums' patrol car (TR. 100).   Deputy Crown positioned himself toward the rear of the passenger side of the SUV so he could assist Trooper Belgum and keep an eye on Molina (TR. 111). Trooper Belgum's search of the SUV commenced at approximately 11:43 a.m. (TR. 26). Deputy Crown also assisted Trooper Belgum in searching the SUV (TR. 101-102).   Initially, Trooper Belgum and Deputy Crown noted some aluminum foil and grease in one of the dash vents and were suspicious that contraband was secreted in the passenger side dash area (TR. 31-33; 104-105).   When Trooper Belgum noted the grease in the dash area, Trooper Belgum called for a drug canine to be brought to the roadside scene (TR. 33).

After detecting the grease and foil in the vent area, Trooper Belgum directed Molina to come to the passenger side of the SUV and asked Molina if Molina had any explanation

4

of the foil and grease (TR. 33).  Molina did not have an answer or was unable to understand the question, but reached for the vent area of the SUV (TR. 34).  Trooper Belgum told Molina to leave it alone and directed him back to the front of the SUV (TR. 34; 114).  Trooper Belgum then inserted his knife on top of the seam of the passenger side air bag dash cover and exerted some pressure (TR. 36).   When nothing happened, Trooper Belgum did the same to the bottom seam and the cover fell off (TR. 37).  This occurred at approximately 12:02 p.m. (TR. 37).  Immediately noticeable were two packages (TR. 38).  Behind the air bag cover was a California license plate (TR. 37-38).  The two packages were wrapped in black plastic wrap (TR. 38).  Following the discovery of the packages, Molina was ordered to ground (TR. 114).  After the command was repeated several times and Deputy Crown reached for his sidearm, Molina went to the ground and was handcuffed (TR. 114-115).

## LEGAL ANALYSIS

### A. Traffic Stop

"[A] police officer who personally observes a traffic violation has probable cause to stop the vehicle." ***United States v. $404,905.00 in U.S. Currency,*** 182 F.3d 643, 646 (8th Cir. 1999) (**citing *Pennsylvania v. Mimms***, 434 U.S. 106, 109 (1977)).  In this case Trooper Belgum clocked Molina's SUV speeding by traveling at 83 miles per hour in a seventy-five miles per hour zone.  There is no dispute that Trooper Belgum had probable cause to stop Molina's SUV.

### B. Molina's Detention

Contemporaneous with a valid traffic stop, a police officer may detain the motorist while completing a number of routine tasks such as computerized checks of the vehicle registration, driver's license and criminal history, and issuing a citation. ***$404,905.00,*** 182 F.3d at 647; **see also *United States v. Sokolow***, 490 U.S. 1, 7 (1989).  Additionally, the police officer may inquire about the motorist's destination, purpose of the trip and whether the police officer may search the vehicle. ***$404,905.00,*** 182 F.3d at 647; ***U.S. v. Allegree,*** 175 F.3d 648, 650 (8th Cir. 1999).  The police officer may take further action as

necessitated by the information volunteered by the motorist, observations of the contents of the vehicle, perceptions made the police officer regarding illegal drug use, and divergent information from the passengers.  *$404,905.00,* 182 F.3d at 647; *Allegree,* 175 F.3d at 650-51.

Trooper Belgum engaged Molina in conversation regarding Molina's travel plans. While the language barrier between Trooper Belgum and Molina was difficult, it was not insurmountable.  From a review of the videotape and the transcript of the videotape, the court observed an exchange of information requiring repetition of questions and answers; however, the court also finds that there was a mutual understanding of the colloquy between Trooper Belgum and Molina.  Molina was detained no longer than necessary to complete the warning ticket for speeding and the record check which Trooper Belgum radioed into dispatch.  The court finds the period of detention to be justified and reasonable under the circumstances.

### C.  Consent to Search

While Trooper Belgum had suspicions about ongoing criminal activity by Molina because of Molina's answers regarding Molina's itinerary, the strong odor of detergent in the SUV, and Molina's criminal history, the government argues Molina consented to the search of the SUV.  The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and such "[v]oluntariness is a question of fact to be determined from all the circumstances."  *Ohio v. Robinette,* 519 U.S. 33, 40 (1996).  Some personal characteristics that aid in determining voluntariness of consent are age, intelligence, whether an individual was under the influence of drugs or alcohol, whether an individual was read his *Miranda* rights, and whether an individual had experienced prior arrests. *United States v. Welerford*, 356 F.3d 932, 936 (8th Cir. 2004).  The court can also look at environmental factors including, the period of time that the individual was detained; whether the police threatened, physically intimidated, or punished the individual; whether promises or misrepresentations were made upon which the individual relied; whether the individual was in custody or under arrest at the time of consent; whether the consent

occurred in a public or secluded place; and whether the individual objected or stood by silently while the search occurred. **Id.**

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." **Bumper v. North Carolina**, 391 U.S. 543, 548-49 (1968) (footnotes omitted). "The government bears the burden of proving voluntary consent [to search] by a preponderance of evidence." **United States v. Galvan-Muro**, 141 F.3d 904, 907 (8th Cir. 1998).

No evidence suggests Molina was threatened, intimidated, or promised anything in return for giving consent to search. Molina was not restrained. Molina did not appear to be under the influence of alcohol or drugs. Trooper Belgum had given Molina the warning ticket, returned Molina's documents and told Molina that was all and to have a safe trip before Trooper Belgum initiated a conversation about contraband and whether he could search the vehicle. The period of time from the initial stop until Molina gave his written consent to search was about twenty minutes. There were two officers at the scene of the stop, however only one officer spoke to or interacted with Molina until after the consent to search form was signed. Although Molina and Trooper Belgum had some difficulty in understanding one another, they were able to carry on some conversation about Molina's travel plans and the reason for the traffic stop. Molina appeared relaxed and was jovial during the conversation. Molina was forthright about his ability to understand Trooper Belgum and stated when he (Molina) did not understand. Trooper Belgum attempted to clarify himself verbally, in English, but when that was not working, Trooper Belgum obtained the Spanish consent form for Molina's review. Further, Molina did not appear confused about the consent after being shown the consent form written in Spanish. The officers did not begin to search the vehicle until after Molina read and signed the consent to search form. The form informed Molina he had the right to refuse the search. **See** Exhibits 2 and 15 ("the right not to have this search to take place"). Molina did not object to the search of the vehicle or attempt to stop the officers. The court finds the government has shown that Molina voluntarily and knowingly gave consent to search the vehicle. Therefore, any

evidence found in the vehicle may be used against Molina in the prosecution of the instant offense and Molina's motion to suppress should be denied.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that** Arturo Gomez Molina's motion to suppress (Filing No. 14) be denied.

### ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 10th day of February, 2006.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge